## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCHIFF FOOD PRODUCTS CO., INC., a New York corporation doing business in New Jersey, | Case No.: 2:18-cv-09017-SDW-CLW<br><br>Civil Action |
|       Plaintiff, | |
|   v. | |
| TURER BITKISEL URETIM HAYVANCILIK INSAAT SU URUNLERI ORMAN URUNLERI TARIM GIDA SANAYI VE TICARET ANONIM SIRKETI dba TURER BITKISEL A.S. TEPECIK MAH, a Turkish company doing business in New Jersey; CELSAN ITHALAT IHRACAT VE TICARET LIMITED SIRKETI, a Turkish company doing business in New Jersey, | |
|       Defendants. | |

---

**PLAINTIFF SCHIFF'S OPPOSITION TO DEFENDANT CELSAN'S MOTION TO DISMISS OR STAY PROCEEDINGS AND TO COMPEL ARBITRATION, OPPOSITION TO DEFENDANTS' CROSS-MOTION TO VACATE DEFAULT, AND REPLY TO DEFENDANTS' OPPOSITION TO SCHIFF'S MOTION FOR DEFAULT JUDGMENT**

---

Joseph E. Boury
LITCHFIELD CAVO LLP
420 Lexington Avenue, Suite 2104
New York, NY 10170
(212) 434-0100

*Attorney for Plaintiff Schiff Food Products Co., Inc.*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT ............................................................................................................. 5

I.      This Court Should Not Vacate the Default Because It Was
        Caused by Defendants' Culpable Conduct, a Significant,
        Willful Delay, Which Resulted in Substantial Prejudice to
        Schiff ................................................................................................................. 5

        A.      Legal Standard ........................................................................................ 5

        B.      The Defendants' Four-and-a-Half Year Delay in
                Addressing the Adulteration Issue before and after Schiff
                Filed Its Complaint Demonstrates Their Culpability and
                the Prejudice Experienced by Schiff ................................................ 7

II.     This Court Should Grant Schiff's Motion for Default Judgment
        Because Equity Demands It ............................................................................ 12

III.    This Court Should Not Dismiss This Action, and at Most
        Should Stay Proceedings under 9 U.S.C. § 3 .............................................. 13

IV.     This Court Has Personal Jurisdiction over Turer and New
        Jersey Is the Appropriate Forum for This Dispute ...................................... 14

        A.      This Court Has Specific Jurisdiction over Turer Because
                Many Facts of the Case Tie Turer to New Jersey ......................... 15

        B.      This Court May Exercise General Jurisdiction over Turer
                Because Turer's Extensive Involvement with the Forum
                is Continuous and Systematic .......................................................... 17

        C.      Turer's Argument to Transfer This Case to New York
                under *Forum Non Conveniens* Is Unfounded and Yet
                Another Meritless Delay Tactic ....................................................... 18

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102 (1987) ............................17

*Berthelsen v. Kane*, 907 F.2d 617 (6th Cir. 1990).....................................................6

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ....................14

*Buffalo Molded Plastics, Inc. v. Omega Tool Corp.*, 344 B.R. 394 (Bankr. W.D. Pa. 2006) ................................................................................................................10

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142 (3d Cir. 1990).......................................13

*D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009)...............................17

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).........................................................14

*DirectTV Inc. v. Pepe*, 431 F.3d 162 (3d Cir. 2005)................................................13

*Doering v. Copper Mountain, Inc.*, 259 F.3d 1202 (10th Cir. 2001) ......................17

*Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71 (3d Cir. 1987) ......................................6

*Feliciano v. Reliant Tooling Co.*, 691 F.2d 653 (3d Cir. 1982) ................................6

*Gambone v. Lite-Rock Drywall Corp.*, 124 Fed. Appx. 78 (3d Cir. 2005) ...............9

*Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120 (3d Cir. 1983) ..................6

*Harris v. Bennett*, 746 Fed. Appx. 91 (3d Cir. 2018)..............................................13

*Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984) .............. 15, 17

*Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir. 1984)......................................... 11, 12

*Int'l Shoe v. Washington*, 326 U.S. 310 (1945)................................................. 15, 17

*J & H Int'l. v. Karaca Zucciye Tic. San A.S.*, 2012 U.S. Dist LEXIS 142914, at *1 (D.N.J. Oct. 3, 2012, No. 2:10-CV-03975) .........................................................19

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018).................................................14

*Link v. Wabash R.R. Co.,* 370 U.S. 626 (1962) .......................................................12

*N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 1 A.3d 632 (N.J. 2010) ................................................................................................................18

*Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980) ...........................................12

*Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir. 1951) ....................6

*United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192 (3d Cir. 1984)............5

*Walden v. Fiore*, 71 U.S. 277 (2014)................................................................ 15, 16

*World Entm't Inc. v. Brown*, 487 Fed. Appx. 758 (3d Cir. 2012) .......................9, 11

## STATUTES

9 U.S.C. § 2 ...........................................................................................................13

9 U.S.C. § 3 .................................................................................................. passim

## RULES

Fed. R. Civ. P. 8(b) ................................................................................................5

## OTHER AUTHORITIES

Restatement (Third) of Agency § 1.01 (2006)........................................................18

## INTRODUCTION

Plaintiff Schiff Food Products Co., Inc. ("Schiff") is relieved that Defendants Celsan and Turer have finally arrived at the "negotiating table," even if only to try to avoid a final, executable default judgment. More than four-and-a half years have passed since Schiff was forced to recall peanut-tainted cumin supplied by Defendants to protect the public health.  Schiff spent millions of dollars in the process. Between the recall and this lawsuit, Defendants once communicated that they would help solve the adulteration and recall problem, then became unavailable for negotiation, then flipped their position, denying any and all involvement or responsibility for the recall and refusing to negotiate further.

This Court must not vacate the Default it entered against Defendants and should grant Schiff's Motion for Default Judgment against Defendants. Defendants, large and sophisticated international spice companies, have no excuse for not knowing how to defend themselves in their primary market, the United States. This Court had a sound basis to enter Default against Defendants and, contrary to Defendants' assertions, has little reason to vacate the Default now. Further, this Court should grant Schiff's Motion for Default Judgment because considerations of equity demand it.  Schiff has experienced substantial prejudice as a result of Defendants' inexcusable delay, and Defendants should not be allowed to jump back

into this case unscathed over a year after it began, which was about three and half years after Schiff first noticed Defendants of the cumin adulteration.

Additionally, Celsan's Motion to Dismiss this case should be denied. Schiff's Complaint alleges a *prima facie* case for relief based on credible factual history. If this Court does not grant Schiff's Motion for Default Judgment because it decides it must act pursuant to the Federal Arbitration Act, it should *at most* stay the case to permit arbitration, as the statute provides at 9 U.S.C. § 3. In the event that this Court mandates arbitration and the Defendants don't show up for arbitration, dismissing this case would have the prejudicial effect of requiring Schiff to restart its Court proceedings, instead of picking back up where the case is now. Defendants' delay supports staying, instead of dismissing, this case.

Finally, Turer's lack of personal jurisdiction and *forum non conveniens* arguments are unfounded and should be ignored. Turer admits that the United States is its primary market and sells spices through its New Jersey brokers with the understanding that products will end up in New Jersey. The broker contracts appended to Turer's motion—to which Turer admits it was a party—have their broker's and Schiff's New Jersey addresses on them. Turer traveled to New Jersey to attend a business meeting with Schiff, arranged by another of Turer's New Jersey spice brokers, (at which, by the way, Turer was properly served notice of this case). The two New Jersey spice brokers referenced are two of only three brokers Turer

2

uses to sell spices into the United States. Turer's U.S. commerce reaps the benefits of the New Jersey forum. It simply has no grounds on which it can wriggle out of this case.[1]

## FACTUAL BACKGROUND

Defendants have stalled resolution of this case by first indicating a willingness to cooperate, then by going silent, and finally, after substantial delay, by reversing its position and refusing to negotiate or admit any responsibility for the tainted cumin it supplied Schiff.

Celsan Ithalat Ihracat ve Ticaret Limited Sirketi ("Celsan") and Turer Bitkisel ("Turer") supplied Schiff with implicated lots of adulterated cumin between March 2014 and September 2014 pursuant to four separate purchase orders. Dkt. 1 ¶¶ 13-21; Dkt. 25-1 p. 15; Dkt. 29-2, 29-3, 29-4. In December 2014, Schiff learned by laboratory testing that the cumin it purchased from Celsan and Turer was adulterated by peanuts and/or peanut protein. *Id*. at ¶ 22; A. Garrett Decl. Ex. A. Immediately

---

[1] This brief responds to: (1) Celsan's Brief in Support of Cross-Motion to Vacate Default and in Opposition to Plaintiff's Request for Default Judgment, Dkt. 23-1; (2) Celsan's Memorandum of Law in Support of its Motion to Compel Arbitration and Dismiss or Stay Proceedings, Dkt. 25-1; and (3) Turer's Memorandum of Law in Opposition to Motion for Entry of Default Judgment and in Support of Cross-Motion to Vacate Default, Dkt. 29-8. Schiff has written this brief consistent with the limitations of Local Rule 7.1, which permits a greater page limit for a brief in opposition to a dispositive motion.

thereafter, Schiff began recalling the cumin and negotiating payment with customers who suffered damages as a result. *Id.* at ¶¶ 23-28.

Less than a month later, on January 7, 2015, outside counsel for Schiff emailed and FedEx'd letters to Celsan and Turers' principals informing them of the adulteration, the implicated lots, the recall, and Schiff's expectation that Celsan and Turer would help pay for the liability they created. A. Garrett Decl. Ex. A. Celsan and Turer initially responded positively, indicating that they would help remedy the harm. J. Krausz Decl. ¶ 11; A. Garrett Decl. Ex. B; Ex. F. After their initial responses, however, Celsan and Turer became difficult to engage. J. Krausz Decl. ¶ 12. In November 2016, Defendants indicated to Schiff's Turkish counsel a change in position by denying all liability and refusing to pay for any of the costs associated with their adulterated product. J. Krausz Decl. ¶ 13; A. Garrett Decl. Ex. F. After unsuccessful attempts to engage Celsan and Turer, Schiff filed its Complaint in May 2018. Dkt. 1.

On June 27, 2018, Schiff's Chief Administrative Officer, Mr. Joseph Krausz, attended a meeting with Turer coordinated by a third-party broker, Champon & Yung, Inc. ("Yung"). J. Krausz Decl. ¶ 16; Dkt. 29-1 (H. Cica Decl.) ¶ 21. In coordinating the meeting, Yung indicated that the purpose of the meeting was to arrange new contracts between Schiff and Turer. J. Krausz Decl. ¶ 18; H. Cica Decl.

¶ 23. Schiff identified this meeting as an opportunity to serve Turer notice of this lawsuit and properly served Turer at the meeting. J. Krausz Decl. ¶ 20.

## ARGUMENT

### I. This Court Should Not Vacate the Default Because It Was Caused by Defendants' Culpable Conduct, a Significant, Willful Delay, Which Resulted in Substantial Prejudice to Schiff

This Court should not vacate the Default it rightfully entered after Defendants failed to show up in this case to defend themselves. As the Court announced in its Order and Entry of Default, Defendants failed to "plead or otherwise defend" against Schiff's claims for damages incurred as a result of Defendants' tainted cumin, in violation of Fed. R. Civ. P. 8(b). Dkt. 15, 16. Defendants' late arrival to the case is not excusable, nor does it undo the prejudice suffered by Schiff as it waited and continues to wait to collect for its losses caused by Defendants. In the event that this Court stays the case under 9 U.S.C. § 3, vacating the Default could potentially have the detrimental effect of delaying relief further, should Defendants again stop participating in the resolution of this dispute during arbitration.

### A. Legal Standard

This Court may only set aside a default for "good cause" shown. Fed. R. Civ P. 55(c). To determine whether "good cause" exists to set aside the default, this Court must consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of

the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (citations omitted).

Celsan cites to a Sixth Circuit case for the proposition that "delay alone is not a sufficient basis for establishing prejudice," but the Third Circuit has viewed the issue differently. Celsan Cross-Mot., Dkt. 23-1 p. 5 (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). In *Emcasco Ins. Co. v. Sambrick*, this Court suggested that, in certain circumstances, delay may be an appropriate basis to establish prejudice. *See* 834 F.2d 71, 74 (3d Cir. 1987) (opining that delay may establish prejudice in "rare" circumstances).  In the case cited by *Emcasco* for this assertion, this Court determined that a mere two-week delay was not long enough to establish prejudice. *Id*. (Citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982)).

Other cases cited by Celsan for the proposition that delay is an insufficient basis to establish prejudice contain some defect in notice, service, or procedure that is distinguishable from the circumstances here. In *Tozer v. Charles A. Krause Milling Co.*, the Third Circuit set aside a default judgment because the defendant had no actual knowledge that the lawsuit commenced. 189 F.2d 242, 245-46 (3d Cir. 1951). In *Gross v. Stereo Component Systems, Inc.*, the Circuit set aside a default judgment because "defendant's conduct in failing to timely answer was not willful." 700 F.2d 120 (3d Cir. 1983).  As discussed *infra*, Defendants' extensive delay in

participating in this dispute both before and after Schiff's Complaint was filed demonstrate willfulness and recklessness, suggesting that delay is a permissible basis for this Court to maintain its Default and grant default judgment here. Further, Schiff has experienced prejudice from Defendants' delay beyond merely "having to wait." *Infra*, Section I.B.

> **B.  The Defendants' Four-and-a-Half Year Delay in Addressing the Adulteration Issue before and after Schiff Filed Its Complaint Demonstrates Their Culpability and the Prejudice Experienced by Schiff**

This Court should not vacate its Default because Schiff has been and continues to be strongly prejudiced by Defendants' delay, and because Defendants brought about this Court's Entry of Default by knowing about this lawsuit but deciding nevertheless not to respond.  Further, it is unclear whether any of either Defendants' claimed defenses have any merit.  Regardless of Defendants' potential defenses, their knowing delay in negotiating prior to the filing of Schiff's Complaint and in responding to this lawsuit demonstrate Defendants' culpability and that vacatur of the Default would further prejudice Schiff.

Schiff has experienced prejudice in several ways as a result of Defendants' conduct. Schiff has been deprived of the money owed it by Defendants as a result of the tainted cumin recall, which it could have used in any number of ways—capital improvements, expansion, investment, and so on.  By stalling relief, Defendants have had the benefit of those monies in the interim.  Further, the tarnish on Schiff's

7

reputation for the adulteration has lived on as Schiff still has no judgment vindicating its involvement in the adulteration.  Most significantly, as time has passed, important discoverable information in Turkey, including about Defendants' quality assurance processes and the cumin lots at issue, has potentially vanished as Defendants likely have updated their equipment and policies, and freely conducted their business, without regard to this lawsuit and the associated obligation to preserve all documents and information potentially relevant to the litigation. Schiff is particularly vulnerable to this type of prejudice because of Defendants' remote location, which presents unique difficulties for Schiff in holding Defendants accountable for any lost information related to this dispute.

Regarding the culpability prong of the inquiry, the Default entered against Defendants was undeniably a result of their willful, delaying conduct.  Schiff noticed the Defendants about the adulteration *in January of 2015*, more than four-and-a-half years ago. A. Garrett Decl. Ex. A. Schiff repeatedly communicated with Defendants between that date and the filing of the Complaint. J. Krausz Decl. ¶¶ 10-24. Schiff's repeated communications to Defendants effectively put Defendants on notice that Schiff intended to pursue its claim against them.

Turer's conduct in this proceeding resulted in the Clerk's Entry of Default because Turer (1) received proper service and notice of a lawsuit in this United States Court; (2) did not comply with the *Federal Rules of Civil Procedure* and had its

Answer stricken; and (3) did not bother with the case again until Schiff's Motion for Default Judgment was noticed.[2] J. Krausz Decl. ¶¶ 19-24; Dkt. 11.

Citing H. Cica's Declaration, Dkt. 29-1, Turer argues that it did not receive sufficient service in part because Ozer Turer attempted to refuse to take Schiff's service papers in hand. Dkt 29-8 p. 8. But "in-hand delivery [is] not always necessary for proper service of process under Rule 4 of the *Federal Rules of Civil Procedure*." *World Entm't Inc. v. Brown*, 487 Fed. Appx. 758, 761 (3d Cir. 2012) (citing *Gambone v. Lite-Rock Drywall Corp.*, 124 Fed. Appx. 78, 79 (3d Cir. 2005) (holding that leaving papers on doorstep after the front door was slammed in an attempt to evade service and announcing service constituted sufficient service)). H. Cica's Declaration effectively admits that service was sufficient because the meeting at which Turer's owner was served *was arranged independently by one of Turer's three American brokers unaffiliated with Schiff*, Yung. ¶¶ 21-29. At the meeting, Schiff attempted and announced face-to-face, in-person service. *Id*. The Declaration even admits that Yung, not Schiff, coordinated the meeting, ¶ 1, that the purpose of the meeting was business development, ¶ 23, and that Schiff expressed trepidation about meeting with Turer but was "willing to talk," ¶ 24. We know of no case law

---

[2] Turer insists that sworn declarations and/or affidavits are somehow not of probative value, Dkt. 29-8 p. 8, but the Third Circuit (and likely most, if not all, courts across the country) have a long history of treating sworn statements as potentially probative factual evidence. *See e.g.*, *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 479 (3d Cir. 2016) (holding an affidavit to be sufficient evidence to prevent dismissal of action).

that states that, if a Complainant knows it will be in the same place at the same time as an intended Defendant, the Complainant must warn the intended Defendant ahead of time of his intent to serve process.

At their meeting with Yung, Turer was thereby noticed of the Complaint and subject to the Federal Rules of Civil Procedure. J. Krausz Decl. ¶¶ 22-24. It violated the rules by filing a defective Answer and by never seeking to cure the defect or respond further to the Complaint. Dkt. 4. It is therefore undeniable that Turer acted culpably in bringing about the Default.

After "learning of the pendency of this action," Turer argues, it "erroneously believe[ed]" its Answer was sufficient. Dkt. 29-8 p. 8. If Turer learned of the action, did it not learn of the Court's Order striking its answer? Dkt. 11. Did it not inquire further into the lawsuit, hoping it would instead disappear? Turer is a sophisticated business entity and the United States is one of its primary markets. A. Garrett Decl. Ex. C. (Turer's website statements explaining its sophistication and presence in the American market). This Court should not lend credence to Turer's "erroneous belief" that its defective Answer and delay were excusable. Turer's presence in the United States and sophistication demand a higher level of competence. *Cf. Buffalo Molded Plastics, Inc. v. Omega Tool Corp.*, 344 B.R. 394, 404 (Bankr. W.D. Pa. 2006) (expecting a sophisticated business entity to be able to comply with statutory requirements because of its sophistication); A. Garrett Decl. Ex. C.

Similarly, Celsan received proper service of this United States lawsuit pursuant to Hague Convention requirements but argues that it made a "mistake" by not submitting an Answer in the proper forum. Dkt. 15 pp. 1-2, 6-7; Dkt. 23-1 p. 8. As a properly served, sophisticated business entity availing itself of the American market, Celsan's insistence that it didn't answer the Complaint as a result of "mistake" should not carry any weight.

In conclusion, both Turer and Celsan's delay in defending themselves in this dispute before and after the Complaint was filed prejudiced Schiff substantially and culpably led to the Default. Celsan's brief captures the culpability threshold met by both parties for the Default to remain in place: "[r]eckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." Dkt. 23-1 p. 12 (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir. 1984)); *see also World Entm't Inc.*, 487 Fed. Appx. at 761 ("As to the [culpability] consideration, showing 'willfulness' or 'bad faith' on part of the defendant leading to the entry of default suffices to show culpable conduct.") (Citation omitted). Here, Celsan and Turer have willfully disregarded this dispute to Schiff's detriment. The Default must remain in place either for purposes of granting default judgment or, in the event that this Court stays the case under 9 U.S.C. § 3 and Defendants stall arbitration proceedings, so that this Court can pick up where it left off and relief is not delayed further.

## II. This Court Should Grant Schiff's Motion for Default Judgment Because Equity Demands It

This Court should grant Schiff's Motion for Default Judgment and not permit

Defendants to continue litigating this dispute after knowingly waiting nearly three-

and-a-half years before Schiff filed its Complaint and more than a year after Schiff

filed the Complaint to dispute Schiff's claims. When considering whether to enter a

default judgment, this Court is authorized to act on equitable grounds. *Hritz*, 732

F.2d at 1180–81. Citing the Supreme Court of the United States, the Third Circuit in

*Hritz* stated:

> It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court. As Justice Harlan explained in the parallel context of sanctions for failure to prosecute a claim, a trial court's discretion to dismiss a Complaint is a power of "ancient origin" that
>
>> has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629-31, 82 (1962); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765 (1980).
>
> . . . .
> Between the extremes of repeated contumacious conduct and innocent procedural error are the manifold instances of neglect and inadvertence that require trial courts to weigh the equities of the situation and the need for the efficacious resolution of controversies.

*Id*.

In light of Defendants' willful delays in participating in this dispute, their

notice and knowledge of the action, and their sophistication, it would be inequitable

to permit them to continue litigating this case.  As a matter of policy, a defendant should not be able to rid itself of all negative consequences resulting from such delinquency.

"A default is treated as an admission of the facts alleged" and once a default is entered, a "plaintiff may still be required to prove that she is entitled to the damages that she seeks." *Harris v. Bennett*, 746 Fed. Appx. 91, 93–94 (3d Cir. 2018) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *DirectTV Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)).  Here, the Default should remain intact, which preserves Defendants' concession of Schiff's allegations. Because Schiff's Complaint, the Default, and the Motion for Default Judgment establish a conceded case on well pled facts and the resulting "sum certain" damages, this Court can award default judgment to Schiff without further inquiry. *Id*.; Dkt. 1; Dkt. 15; Dkt. 16; Dkt. 18 pp. 18–19.  Under this authority, this Court should grant Schiff's Motion for Default Judgment.

### III.    This Court Should Not Dismiss This Action, and at Most Should Stay Proceedings under 9 U.S.C. § 3

Celsan's Motion to Dismiss this case should be denied.  Schiff's Complaint makes a *prima facie* case for relief based on credible, factual history, Schiff effected proper service upon Defendants, and this Court has jurisdiction over Defendants.

Celsan has offered two arbitration options to this Court in its brief: dismissal of the case under 9 U.S.C. § 2 to compel the parties to arbitrate, or to stay the case

until arbitration is complete under 9 U.S.C. § 3. Dkt. 25-1 p. 8.  Dismissal is inappropriate for the above reasons.  Dismissing the case would presumably force Schiff to restart federal court proceedings in the event that Defendants don't show up for arbitration, which would delay resolution of this case even further.

Therefore, if this Court does not grant default judgment despite the legal authority and strong factual basis to award it, discussed in Section II *supra*, Schiff is willing, in the alternative, to commence binding arbitration with both Defendants if the Court stays the case under 9 U.S.C. § 3. Schiff is willing to draft a concise motion or request for stay separate from this briefing if the Court deems it necessary.

## IV.  This Court Has Personal Jurisdiction over Turer and New Jersey Is the Appropriate Forum for This Dispute

This Court has personal jurisdiction over Turer.  The Supreme Court of the United States "has held that a federal court may exercise personal jurisdiction over a foreign corporate defendant" if the defendant is "at home" in the forum "or if the activities giving rise to the lawsuit occurred or had their impact here." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1480 (2018) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014)).

This Court has specific personal jurisdiction over Turer because Schiff's suit against Turer arises "out of or relate[s] to [Turer]'s contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citations omitted).  This Court also has general personal jurisdiction over Turer because Turer

14

sells its products into the United States substantially through New Jersey and can therefore be fairly characterized as having "continuous and systematic" contact with the State. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 416–17 (1984). This Court's exercise of jurisdiction over Turer comports with "traditional notions of fair play and substantial justice," and is therefore Constitutional and proper. *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation omitted).

Additionally, this Court should deny Turer's request for transfer of this case to New York on *forum non conveniens* grounds because the events from which this case arose occurred in New Jersey, and Schiff and Turer's brokers, parties relevant to this case, reside in New Jersey.

### A. This Court Has Specific Jurisdiction over Turer Because Many Facts of the Case Tie Turer to New Jersey

This Court has personal specific jurisdiction over Turer because its actions in this dispute were largely based in New Jersey.

"The proper question" in determining personal specific jurisdiction is "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 71 U.S. 277, 290 (2014). The inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 284 (citations and quotation marks omitted). To establish specific jurisdiction, "the relationship [to the forum] must arise of contacts that the defendant himself creates with the forum

15

State," and "the defendant's suit-related conduct must create a substantial connection with the forum." *Id*.

Here, it is apparent that Turer has created a substantial relationship with New Jersey of its own volition and that its conduct related to this case demonstrates a substantial connection with New Jersey. Specifically:

- Turer knowingly entered into contracts with Schiff, a business operating in New Jersey; *see e.g.*, Dkt. 29-4.

- Turer knew its product was being delivered to Schiff's New Jersey facility and may have acted to accommodate the tainted cumin's New Jersey destination; *Id*.

- One of only three United States brokers used by Turer, Sayia, operates out of New Jersey. A. Garrett Decl. Ex. E. Sayia was centrally involved in the facts of this case because it brokered the contracts for the cumin at issue; *see e.g.*, Dkt. 29-4; H. Cica Decl. ¶¶ 8–17.

- Another of Turer's three United States brokers, Yung, independently arranged a business development meeting between Schiff and Turer in New Jersey. Although that meeting was intended to be a business development meeting, the parties understood that their adulterated cumin dispute would be a subject of the meeting; H. Cica Decl. ¶ 24; J. Krausz Decl. ¶ 18.

- Turer's executives, including its owner, its owner's wife, and H. Cica, traveled to New Jersey for said business meeting arranged by Yung and received service for this case while at the meeting. H. Cica Decl. ¶¶ 25, 27; J. Krausz Decl. ¶ 21.

- Turer has created its own substantial contact with New Jersey by conducting all of its U.S. business through two New Jersey brokers, with whom Turer chose to work.

The adulterated cumin at issue was brokered through Turer's standard "stream of commerce," *i.e.*, "the regular and anticipated flow of products" into the United States, through New Jersey. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 117 (1987) (Brennan J., concurring). Turer has the minimum contacts with New Jersey and the specific contacts with New Jersey related to this case to be subject to this Court's jurisdiction.

### B. This Court May Exercise General Jurisdiction over Turer Because Turer's Extensive Involvement with the Forum is Continuous and Systematic

This Court has *general* jurisdiction over Turer in addition to specific jurisdiction because Turer does most of its United States business through New Jersey and is therefore "at home" in the State.

This Court can exercise general personal jurisdiction over Turer if its contacts with New Jersey are "continuous and systematic." *Helicopteros Nacionales de Columbia*, 466 U.S at 416–17; *Int'l Shoe Co.*, 326 U.S. at 320. A corporate defendant's solicitations of "business in the state through a local office or agents" and "the volume of business conducted in the state by the corporation" are key considerations to determining whether Turer's connection to New Jersey is "continuous and systematic." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009) (citing *Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001)).

Two of Turer's three United States brokers operate in New Jersey. A. Garrett Decl. Ex. E (Sayia); Ex. D (Yung).  The United States is one of Turer's primary markets. A. Garrett Decl. Ex. C. It is highly likely, therefore, that Turer conducts most of its United States business, and a large portion of its entire business, through New Jersey.  Further, because of the brokers' location and Turer's willingness to fly to New Jersey for a business development meeting, it is likely that Turer has visited New Jersey for business on more than just the June 27, 2018 occasion. Further, as brokers authorized to make deals on behalf of Turer and subject to Turer's control, Sayia and Yung are "agents" of Turer located in New Jersey.  *N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 1 A.3d 632, 639 (N.J. 2010) (quoting Restatement (Third) of Agency § 1.01 (2006)). It is thus apparent that Turer has "continuous and systematic" contact with the New Jersey forum.

Because New Jersey is effectively a "portal" between Turer and the United States market, this Court can fairly hold that Turer is connected to New Jersey continuously and systematically and therefore subject to its general jurisdiction.

### C.    Turer's Argument to Transfer This Case to New York under *Forum Non Conveniens* Is Unfounded and Yet Another Meritless Delay Tactic

New Jersey is the appropriate forum for this action for a simple, irrefutable reason: all business conducted related to this case was conducted in New Jersey. Turer's *forum non conveniens* argument is consistent with Turer's pattern of

conduct, with which Schiff is familiar—delay whenever possible. Turer's endgame here is to force Schiff to chase it into another forum and restart its attempt to seek relief all over again.  Fortunately, the *forum non conveniens* analysis counsels in favor of keeping this case in New Jersey.

As Turer states, Dkt. 29-8 p. 11, the *forum non conveniens* analysis requires consideration of three factors: (1) the availability of an adequate alternative forum; (2) the amount of deference due to the plaintiff's choice of forum; and (3) the balance of the private and public interest factors.  *See e.g.*, *J & H Int'l. v. Karaca Zucciye Tic. San A.S.*, 2012 U.S. Dist LEXIS 142914, at *1 (D.N.J. Oct. 3, 2012, No. 2:10-CV-03975) (Wigenton, J.).

Turer asserts that New York is a more appropriate forum because Schiff and Sayia are both New York corporations. Dkt. 29-8, p. 11. But the more persuasive fact is that both Schiff and Sayia have their principal places of business in New Jersey. Schiff's headquarters and operations are in New Jersey, it uses its New Jersey address in business, and it operated from New Jersey when it engaged with Turer in the events from which this dispute arise. Sayia uses its New Jersey address on its contracts and lists only its New Jersey address on its website, presumably as the location of its *actual* operation, not just its registered agent.  A. Garrett Decl. Ex. E.

Because the events from which this case arose occurred in New Jersey, Plaintiff's choice of New Jersey as a forum is the correct one and should be given

19

deference.  Turer dismisses the New Jersey address of Schiff's settlement payee Goya as irrelevant because Goya was a customer of Schiff's customer. But as a result of the contractual relationship of Schiff, Schiff's customer, and Goya, and Turer's tainted cumin, Schiff was forced to make a payment on behalf of Goya's subrogee. Coming to New Jersey presents no difficulty to Turer; through its business trip(s) to New Jersey, Turer has demonstrated its ability to enter the forum without hardship. H. Cica Decl. ¶¶ 25, 27.

## CONCLUSION

For the foregoing reasons, Schiff respectfully requests that this Court maintain its Default and grant Schiff's Motion for Default Judgment.  In the alternative, Schiff requests that this Court stay, and not dismiss, this case and require the parties to arbitrate under 9 U.S.C. § 3.

August 19, 2019                            Respectfully submitted,

                                           s/ Joseph E. Boury
                                           Joseph E. Boury
                                           LITCHFIELD CAVO LLP
                                           420 Lexington Avenue, Suite 2104
                                           New York, NY 10170
                                           (212) 434-0100

                                           *Attorney for Schiff Food Products Co., Inc.*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of August, 2019, I electronically filed the foregoing Brief with the Court by using the CM/ECF system. All parties to the case have been served through the CM/ECF system.

August 19, 2019                                   Respectfully submitted,

s/ Joseph E. Boury
Joseph E. Boury
LITCHFIELD CAVO LLP
420 Lexington Avenue, Suite 2104
New York, NY 10170
(212) 434-0100

*Attorneys for Schiff Food Products Co., Inc.*